IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON

TRACY ANN HANCOCK,

      Plaintiff,

v.                                                                      CASE NO. 2:12-cv-4651

MICHAEL J. ASTRUE[1],
**Commissioner of Social Security,**

      **Defendant.**

## MEMORANDUM OPINION

      This is an action seeking review of the final decision of the Commissioner of Social Security denying the Plaintiff's application for disability insurance benefits (DIB) under Title II of the Social Security Act, 42 U.S.C. §§ 401-433. Presently pending before the Court are Plaintiff's Brief in Support of Judgment, Defendant's Brief in Support of Defendant's Decision and the Response to Defendant's Brief in Support of Judgment on the Pleadings. Both parties have consented in writing to a decision by the United States Magistrate Judge.

      Claimant, Tracy Hancock, filed an application for DIB on December 30, 2009, alleging disability as of October 1, 2009, due to nausea, depression, panic attacks and fibromyalgia. The claim was denied initially and upon reconsideration (Tr. at 75-80, 82-88). On June 1, 2010, Claimant requested a hearing before an Administrative Law Judge (ALJ) (Tr. at 85-86). The hearing was held on September 9, 2011, before ALJ Thomas W. Springer (Tr. at 28-72). By decision dated September 23, 2011, the ALJ determined that Claimant was not entitled to

---

[1] On February 14, 2013, Carolyn W. Colvin became the Acting Commissioner of Social Security. Under Fed. R. Civ. P. 25(d)(1) and 2 U.S.C. § 405(g), Carolyn W. Colvin is automatically substituted as the defendant in this action.

benefits (Tr. at 14-27). The ALJ's decision became the final decision of the Commissioner on June 28, 2012, when the Appeals Council considered additional evidence[2] offered by the Claimant but determined it did not provide a basis for changing the ALJ's decision (Tr. at 1-3). Claimant brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g).

Under 42 U.S.C. § 423(d)(5) and § 1382c(a)(3)(H)(i), a claimant for disability benefits has the burden of proving a disability. *See Blalock v. Richardson*, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. §§ 404.1520, 416.920 (2012). If an individual is found "not disabled" at any step, further inquiry is unnecessary. *Id*. §§ 404.1520(a), 416.920(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. *Id*. §§ 404.1520(b), 416.920(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. *Id*. §§ 404.1520(c), 416.920(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. *Id*. §§ 404.1520(d), 416.920(d). If it does, the claimant is found disabled and awarded benefits. *Id*. If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. *Id*. §§ 404.1520(e), 416.920(e). By satisfying inquiry four, the claimant establishes a *prima facie* case of disability. *Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981).

---

[2] On June 28, 2012, the Appeals Council received additional evidence, Representative Brief Submitted by Carter Zerbe dated March 1, 2012, which it made part of the record as Exhibit 19E.

The burden then shifts to the Commissioner, *McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. 20 C.F.R. §§ 404.1520(f), 416.920(f) (2012). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job and (2) that this specific job exists in the national economy. *McLamore v. Weinberger*, 538 F.2d 572, 574 (4th Cir. 1976).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because she has not engaged in substantial gainful activity since the alleged onset date (Tr. at 16). Under the second inquiry, the ALJ found that Claimant suffers from the severe impairments of obesity, fibromyalgia, gastrosophageal reflux disease (GERD), affective disorder and anxiety disorder. (*Id.*) At the third inquiry, the ALJ concluded that Claimant's impairments do not meet or equal the level of severity of any listing in 20 CFR Part 404, Subpart P, Appendix 1 (Tr. at 17). The ALJ then found that Claimant has a residual functional capacity (RFC) for light work, reduced by nonexertional limitations[3] (Tr. at 19). As a result, Claimant cannot return to her past relevant work (Tr. at 25). Nevertheless, the ALJ concluded that Claimant could perform light exertional jobs such as hand packer, mailroom clerk and file clerk which exist in significant numbers in the national economy (Tr. at 26). On this basis, benefits were denied (Tr. at 27).

---

[3] Claimant can occasionally climb, stoop, crouch and crawl. She must avoid even moderate exposure to hazards as well as avoid concentrated exposure to extreme cold, extreme heat and vibrations. Additionally, Claimant can perform no more than simple, routine, repetitive tasks (Tr. at 19).

Scope of Review

The sole issue before this court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In *Blalock v. Richardson*, substantial evidence was defined as:

> "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'"

*Blalock v. Richardson*, 483 F.2d 773, 776 (4th Cir. 1972) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the Court, is charged with resolving conflicts in the evidence. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the Courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." *Oppenheim v. Finch*, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record, which includes medical records, reveals the decision of the Commissioner is supported by substantial evidence.

Claimant's Background

Claimant was born on September 15, 1970, obtained a high school education, completed Medical Assistant training in 1990 and worked as a class room and teacher's assistant (Tr. at 171, 179, 181). Claimant's disability onset date was October 1, 2009, the last date she worked (Tr. at 171).

The Medical Record

The Court has reviewed all evidence of record including the medical records and will discuss it further below.

4

Claimant's Challenges to the Commissioner's Decision

Claimant asserts that the Commissioner's decision is not based on substantial evidence, the ALJ did not assess the credibility of Claimant's lay witness and the hypothetical question to the Vocational Expert was deficient (ECF No. 14). Claimant also asserts that the ALJ failed to understand the nature of fibromyalgia (ECF No. 15). The Commissioner argues that substantial evidence supports the ALJ's decision, the ALJ's evaluation of Claimant's fibromyalgia and the ALJ's hypothetical question (ECF No. 15).

Fibromyalgia

As explained by the Fourth Circuit in *Stup v. UNUM Life Ins. Co.,* 390 F.3d 301 (4th Cir. 2004),

> [f]ibromyalgia is a rheumatic disease with . . . symptoms including "significant pain and fatigue," tenderness, stiffness of joints, and disturbed sleep. Nat'l Institutes of Health, *Questions & Answers About Fibromyalgia* 1 (rev. June 2004), http://www.niams.nih.gov/hi/topics/fibromyalgia/Fibromyalgia.pdf. *See also Ellis v. Metro Life Ins. Co.*, 126 F.3d 228, 231 n.1 (4th Cir. 1997) (quoting Taber's Cyclopedic Medical Dictionary (16th ed. 1989)); *Sarchet v. Chater*, 78 F.3d 305, 306-07 (7th Cir. 1996). Doctors diagnose fibromyalgia based on tenderness of at least eleven of eighteen standard trigger points on the body. *Sarchet*, 78 F.3d at 306. "People with rheumatoid arthritis and other autoimmune diseases, such as lupus, are particularly likely to develop fibromyalgia." Nat'l Institutes of Health, *supra*, at 4. Fibromyalgia "can interfere with a person's ability to carry on daily activities." *Id.* at 1. "Some people may have such a severe case of fibromyalgia as to be totally disabled from working, but most do not." *Sarchet*, 78 F.3d at 307 (citations omitted). *Stup*, 390 F.3d at 303.

Social Security Ruling 12-2p on the "Evaluation of Fibromyalgia" describes fibromyalgia as a complex medical condition characterized primarily by widespread pain in the joints, muscles, tendons or nearby soft tissues that has persisted for at least 3 months. Although Claimant asserts that "fibromyalgia is manifested almost entirely by substantive symptoms," SSR 12-2p states that sufficient objective evidence is necessary to support a finding that an individual is disabled.

5

In Claimant's Disability Report, Claimant reported to missing a lot of work due to her depression and panic attacks (Tr. at 175). Claimant was a classroom assistant from October 1, 2003, to March 13, 2007, an elementary classroom assistant from November 20, 2008, to February 1, 2009, and a preschool teacher's assistant from February 1, 2009, to October 1, 2009 (Tr. at 176). Claimant reported to standing for 2.5 hours and frequently lifting 50 pounds or more. Claimant reported to lifting and carrying up to 100 pounds because she worked with mentally impaired children and a lot of the mentally impaired children were in diapers and restrained (Tr. at 182). Claimant stated that she had to "restrain the behavior disorder students when they became out of control" (Tr. at 184). She also asserted to lifting "on the mentally challenged students" for the toilet (Tr. at 186).

On February 1, 2010, Claimant completed a Personal Pain Questionnaire. Claimant reported to experiencing pain in all of her joints and her lower back (Tr. at 195). She reported to being in pain all night and all day. In Claimant's Social Security Administration Function Report, she reported to preparing meals and grocery shopping (Tr. at 203). Claimant stated that she performs light cleaning around the house twice a week (Tr. at 202). Claimant reported difficulty walking up and down stairs. Claimant reported that she did not use any ambulatory aid (Tr. at 206). She stated that she does not like to be around a crowd because it causes her to experience a panic attack (Tr. at 204).

A West Virginia Disability Determination Service Disability Determination Evaluation conducted on February 22, 2010, listed Claimant's chief complaints as panic attacks, depression, nausea and fibromyalgia (Tr. at 246). Claimant stood 5 foot 4 inches tall and weighed 212 pounds. Claimant described her daily activities to include getting her children up at 6:00 a.m.

and getting them "off to school." Claimant picks up her kids from school at 3:15 p.m. (Tr. at 249).

A Psychiatric Review performed by Paula J. Bickham, Ph.D., on February 26, 2010, found that Claimant did not suffer from severe impairments (Tr. at 253). Dr. Bickham found Claimant to have mild functional limitations in activities of daily living, maintaining social functioning and maintaining concentration, persistence or pace. Claimant had no episodes of decompensation (Tr. at 263). Dr. Bickham found Claimant to be partially credible (Tr. at 265). Dr. Bickham did not find Claimant's impairments to be severe.

A West Virginia Disability Determination Service Internal Medicine Examination performed by Kip Beard, M.D., on April 7, 2010, stated that Claimant had fibromyalgia "according to history" (Tr. at 272). In Summary, Dr. Beard found that there was some evidence of osteoarthritis about the knees, however, there was no inflammatory arthritis identified and no radiculopathy in relation to her back complaints. (*Id*.) Dr. Beard's physical examination revealed obesity (Tr. at 271-272).

On April 24, 2010, a vocational analysis found that Claimant could perform work at a light exertional level (Tr. at 209). The vocational analysis found that Claimant couldn't perform her past work as a classroom assistant as described by Claimant but Claimant could perform her past work as it is described in the national economy. (*Id.*) Claimant could perform the position of teacher's aid as it is described as a light exertional work level posting in the Dictionary of Occupational Titles. However, the DOT's description does not include the frequent lifting of up to 100 pounds as Claimant described in her previous job duties as a teacher's aide assisting with mentally impaired children.

Sheila Emerson Kelly, M.A., performed a Psychological Evaluation of Claimant on January 14, 2011. Ms. Kelly stated that Claimant reported suffering from severe anxiety and depression but appeared reasonably cheerful during Ms. Kelly's Psychological Evaluation (Tr. at 425). Ms. Kelly reported "My sense is that her psychiatric and physical ailments allow her (perhaps unconsciously) to avoid responsibility and public exposure."

Claimant inconsistently reported her pain was due to fibromyalgia. An Integrated Assessment by Thomas Memorial Hospital on September 9, 2011, reported that Claimant denied any pain (Tr. at 512). Claimant reported to taking prescriptions of Effexor, Xanax, Ambien CR and Nexium. Claimant reported to feeling depressed and anxious. Claimant's treating physician, Dr. Viradia, reported Claimant suffers from severe fibromyalgia and experiences "severe pain in all joints" (Tr. at 460). Claimant asserts that her treating physician's finding of severe fibromyalgia warrants deference (ECF No. 14, pg. 15). Dr. Viradia completed a Fibromyalgia Questionnaire on September 13, 2011, after the administrative hearing (Tr. at 499). Dr. Viradia diagnosed Claimant with severe fibromyalgia (Tr. at 500).

Dr. Viradia's report of Claimant's severe pain on September 13, 2011, differs radically from Claimant's Integrated Assessment on September 9, 2011, when Claimant denied any pain. On September 13, 2011, Dr. Viradia opined that due to Claimant's constant pain, fibromyalgia, chronic fatigue and depression, Claimant was unable to work. Dr. Viradia further stated that "if she did work, [Claimant] would be absent from work more than four days per month. The ALJ gave very little weight to the opinion of this treating physician as it is not supported by the record as a whole, nor even by the physician's own records.

Again, on October 10, 2011, Claimant reported on an Integrated Assessment by Thomas Memorial Hospital that she did not feel any pain. On a scale of 1 to 10, Claimant rated her pain

8

as 0 (Tr. at 519). Claimant reported feeling depressed and anxious and complained of nausea (Tr. at 521). The Court finds that Claimant did not demonstrate the objective criteria required under Social Security Ruling 12-2p. SSR 12-2p requires, among other criteria, that her fibromyalgia pain persisted for at least 3 months.

Evaluating Mental Impairments

The five-step sequential evaluation process applies to the evaluation of both physical and mental impairments. 20 C.F.R. § 416.920a (a) (2012); 20 C.F.R. § 404.1520a (a) (2012). In addition, when evaluating the severity of mental impairments, the Social Security Administration implements a "special technique," outlined at 20 C.F.R. §§ 404.1520a and 416.920a. *Id.* First, symptoms, signs and laboratory findings are evaluated to determine whether a claimant has a medically determinable mental impairment. §§ 404.1520a(b)(1) and 416.920a(b)(1) (2012). Second, if the ALJ determines that an impairment(s) exists, the ALJ must specify in his decision the symptoms, signs and laboratory findings that substantiate the presence of the impairment(s). §§ 404.1520a(b)(1) and (e), 416.920a(b)(1) and (e) (2012). Third, the ALJ then must rate the degree of functional limitation resulting from the impairment(s). §§ 404.1520a(b)(2) and 416.920a(b)(2) (2006). Functional limitation is rated with respect to four broad areas (activities of daily living, social functioning, concentration, persistence or pace and episodes of decompensation). §§ 404.1520a(c)(3) and 416.920a(c)(3) (2012). The first three areas are rated on a five-point scale: None, mild, moderate, marked and extreme. The fourth area is rated on a four-point scale: None, one or two, three, four or more. §§ 404.1520a(c)(4) and 416.920a(c)(4)(2012). A rating of "none" or "mild" in the first three areas and a rating of "none" in the fourth area will generally lead to a conclusion that the mental impairment is not "severe," unless the evidence indicates otherwise. §§ 404.1520a(d)(1) and 416.920a(d)(1) (2012). Fourth,

if a mental impairment is "severe," the ALJ will determine if it meets or is equivalent in severity to a mental disorder listed in Appendix 1. §§ 404.1520a(d)(2) and 416.920a(d)(2) (2012). Fifth, if a mental impairment is "severe" but does not meet the criteria in the Listings, the ALJ will assess the claimant's residual functional capacity. §§ 404.1520a(d)(3) and 416.920a(d)(3) (2012). The ALJ incorporates the findings derived from the analysis in the ALJ's decision:

> The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section.

§§ 404.1520a(e)(2) and 416.920a(e)(2) (2012).

The ALJ held that Claimant's mental impairments, considered singly and in combination, do not meet or medically equal Listings 12.04 and 12.06 requirements (Tr. at 18). *See*, 20 C.F.R. 404 Subpart P, Appendix 1. To demonstrate a mental impairment under the Listings, Claimant's mental impairments must result in at least two of the following:

- Marked difficulties in maintaining social functioning;
- Marked difficulties in maintaining concentration, persistence or pace; or
- Repeated episodes of decompensation, each of extended duration.

A marked limitation means more than moderate but less than extreme. Based on Claimant's Disability Report, testimony, medical reports and medical evaluations, the ALJ found that evidence did not satisfy Listing requirements to demonstrate a mental impairment (Tr. at 18). Claimant has mild restriction in activities of daily living. Claimant reported to performing light cleaning and taking her children to and from school. Claimant has mild difficulties in social functioning. Although Claimant states that she does not like to be around crowds, claimant stated on her functional report that she gets along "ok" with authority figures (for example, police, bosses, landlords or teachers) (Tr. at 206). Claimant also reported that she goes

10

grocery shopping with her husband. With regard to concentration, persistence or pace, Claimant has moderate difficulties. Claimant reported that she can walk ¼ a mile before needing to stop and rest[4] (Tr. at 205). Claimant testified that she can sit for approximately 25 minutes and can stand for 30 minutes before experiencing significant symptoms of pain. Claimant has experienced no episodes of decompensation. Because Claimant's mental impairments do not cause at least two "marked" limitations or one "marked" limitation and "repeated" episodes of decompensation, the criteria for the Listings are not satisfied.

Gastroesophageal Reflux Disease

Claimant's records reveal a significant history of nausea. In 2002, Claimant underwent laparoscopic removal of her gallbladder. On May 26, 2009, Claimant's primary care physician diagnosed her with Gastroesophageal Reflux Disease (GERD). In April 2011, Claimant underwent a colonoscopy and an upper endoscopy. Claimant was diagnosed with small hiatal hernia and mild gastritis. Emily Battle, M.D., of Charleston Surgical Hospital, recommended that Claimant increase the amount of Prilosec to help control her nausea (Tr. at 472). On April 29, 2011, a gastric antrum biops revealed no diagnostic abnormalities and no significant inflammation; a gastric polyp biopsy revealed a fundic gland polyp (Tr. at 21, 469).

Credibility

It is well-settled that a claimant's allegations alone will not establish that she is disabled. *See*, 20 C.F.R. § 404.1529 and *Craig v. Chater*, 76 F.3d 585, 594-595 (4th Cir. 1996). While the ALJ must seriously consider a claimant's subjective complaints, it is within the ALJ's discretion to weigh such complaints against the evidence and to reject them. *See*, 20 C.F.R. § 404.1529 and *Craig*, 76 F.3d at 595. As the fact-finder, the ALJ has the exclusive responsibility for making credibility determinations. *See*, *Shively v. Heckler*, 739 F.2d 987, 989-990 (4th Cir. 1984)

---

[4] Inconsistently, at the administrative hearing Claimant testified that she could maybe walk one block (Tr. at 52).

11

(stating that "[b]ecause he had the opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight").

The ALJ found inconsistencies in the record as a whole. For example, on November 2, 2010, Claimant reported to her treating physician, Arvind Viradia, M.D., that her symptoms of migraine headaches were controlled with prescribed medications. However, on January 14, 2011, Claimant reported to Ms. Kelly that medications did not help with her symptoms of headache. At the administrative hearing on September 9, 2011, Claimant testified that her "migraines have resolved" (Tr. at 45).

The ALJ rejected Claimant's credibility as to disabling subjective complaints, but found that she was limited to light work, reduced by a number of nonexertional impairments (Tr. at 23, 24). In addition to the record's inconsistencies stated above, the ALJ noted that Claimant's subjective complaints were not consistent with her presentation at the hearing or with the objective clinical records. The ALJ held that Claimant's daily activities have, at least at times, been greater than Claimant reported. While the ALJ found that Claimant does experience symptoms of pain as well as some mental health symptoms, he did not find that the limitations from any of Claimant's conditions, either singly or in combination, would totally preclude all work activities (Tr. at 25).

Claimant argues the ALJ failed to do a credibility analysis on Claimant's mother. Anna Louise Burdette, Claimant's mother, testified that Claimant has "been very depressed" (Tr. at 61). Claimant asserted the purpose of her mother's testimony at the hearing was to confirm what Claimant had testified to (Tr. at 59). The ALJ appropriately considered all of the evidence of

record, including objective findings, medical opinions, testimony and Claimant's activities of daily living.

Vocational Expert

When the limitations provided above were included in a hypothetical question, the Vocational Expert identified a significant number of jobs in the national economy that Claimant could perform. Vocational Expert Casey Bass testified that Claimant could perform the positions of classroom assistant and medical assistant, both of which Claimant has been employed in the past. VE Bass testified that Claimant could perform the positions as described in the Dictionary of Occupational Titles (DOT) (Tr. at 67). After the ALJ asked the VE if those positions could be performed assuming the individual is limited to simple, routine, repetitive tasks, the VE answered no. The VE testified that Claimant could perform light, unskilled jobs such as a hand packer, mail room clerk and file clerk. The ALJ then asked if a hypothetical person of Claimant's age, education and work experience had the restriction to avoid public and co-workers could perform sedentary exertional work. The VE testified that such an individual could perform the positions of surveillance system monitor, small parts assembler and product inspector (Tr. at 69).

The ALJ's decision was issued on September 23, 2011. The ALJ found that Claimant's impairment does not meet or medically equal one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix. Substantial evidence supports the determination of the ALJ. Contrary to Claimant's assertions that the ALJ failed to consider her impairments in combination, the ALJ's decision reflects an adequate consideration of her impairments. The ALJ fully complied with his duty in keeping with 20 C.F.R. § 404.1523 (2012). The ALJ found that Claimant has the

residual functional capacity to perform light work as defined in 20 C.F.R.§§ 404.1567(b) and 416.967(b). (*Id.*) The ALJ denied Claimant's application for DIB under the Social Security Act.

After a careful consideration of the evidence of record, the Court finds that the Commissioner's decision is supported by substantial evidence. Accordingly, by Judgment Order entered this day, Claimant's Brief in Support of Judgment on the Pleadings is **DENIED**, Defendant's Brief in Support of Defendant's Decision is **GRANTED**, the final decision of the Commissioner is **AFFIRMED** and this matter is **DISMISSED** from the docket of this Court.

The Clerk of this Court is directed to provide copies of this Order to all counsel of record.

**Enter: September 19, 2013.**

_____
Dwane L. Tinsley
United States Magistrate Judge